IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


GARY NEIL MAGEE and CHARLOTTE
JOHNSON, Individually and o/b/o
a class of similarly situated
persons                                                PLAINTIFFS


       v.              Case No. 6:08-cv-6105


ADVANCE AMERICA SERVICING OF
ARKANSAS, INC., d/b/a ADVANCE
AMERICA CASH ADVANCE; and
ADVANCE AMERICA, CASH ADVANCE
CENTERS, INC.                                          DEFENDANTS


## MEMORANDUM OPINION & ORDER

       Before the Court are Plaintiffs' Motion to Remand (Doc.

12); Plaintiffs' Supplemental Motion to Remand (Doc. 24);

Plaintiffs' Motion for Discovery (Doc. 26); Advance America

Servicing of Arkansas, Inc.'s ("Servicing") Motion to Stay and

Compel Individual Arbitration (Doc. 4); and Advance America,

Cash Advance Centers, Inc.'s ("Centers") Motion to Dismiss for

Lack of Personal Jurisdiction, Or In the Alternative Motion to

Stay Litigation and Compel Individual Arbitration (Doc. 6). For

the reasons discussed below, Plaintiffs' Motions for Remand

(Docs. 12,24) are **DENIED,** Plaintiffs' Motion for Discovery (Doc.

26) is **DENIED AS MOOT,** Defendant Servicing's Motion to Stay and

Compel Arbitration (Doc. 4) is **GRANTED,** Defendant Centers'

Motion to Dismiss for Lack of Personal Jurisdiction or Stay and

Compel Arbitration (Doc. 6) is **GRANTED IN PART AND DENIED IN PART.**

**A. Background**

On October 13, 2008, Plaintiffs filed a putative class-action complaint in the Circuit Court of Clark County, Arkansas, naming both Servicing and Centers as defendants, and alleging violations of the usury provisions in the Arkansas Constitution and the Arkansas Deceptive Trade Practices Act. Defendants used the Class Action Fairness Act ("CAFA") to jointly remove this action on November 25, 2008.

Plaintiffs claim Advance America's (i.e. Centers and Servicing considered together) business model is to give customers cash in exchange for checks on the customer's bank accounts, which it agrees not to cash for a period of time which constitutes the term of the loan. At the end of the term, the customer has the option of redeeming the check, allowing it to be cashed, or entering a new transaction by paying the interest on the loan.   In April 2008, Advance America changed its procedures by reducing the amount of interest charged and adding an additional fee to cash a voucher or money order prepared by Advance America.

According to Plaintiffs, on May 23, 2008, Charlotte Johnson requested a $300 loan from Advance America. She received an instrument that she was required to negotiate at the Advance

AO72A
(Rev. 8/82)

America office where she received the instrument. She gave Advance America a check for $352.28 and nominally received an instrument for $350. The $2.28 difference reflected a 16.97% interest rate. Another Advance America employee then cashed the instrument for a $35 fee. Johnson was never presented the instrument and was never afforded an opportunity to cash it elsewhere. The net result was that Johnson received $37.28 less than was due in two weeks. On September 2, 2008, Gary Neil Magee participated in a similar transaction where he presented a check for $950 and received $855 cash.

The Plaintiffs claim that these transactions are usurious and violate Arkansas law. They seek to void the transactions and recover damages equal to double the amount of interest paid to the Defendants. Plaintiffs also seek damages under the Arkansas Deceptive Trade Practices Act and attorney's fees and costs.

Key provisions of the contract include

**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court for a decision. . . . **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**

1. For purposes of this Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this

Finance Agreement (including the Arbitration Provision), the information you gave us before entering into this Finance Agreement, including any past agreement or agreements between you and us;
(c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entitles (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims") which claims are expressly prohibited as provided in Paragraph 2 below; and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:
**(a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**
**(b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
**(c) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against

AO72A
(Rev. 8/82)

us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION**.

9. This arbitration Provision is to be interpreted and applied such that all parties to the Arbitration Provision have equal rights under it.

11. **OPT-OUT PROCESS.** You may choose to opt out of this Arbitration Provision but <u>only</u> by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing with thirty (30) calender days of the date of this Customer Agreement...

(emphasis in original). Both Magee and Johnson appear to have signed the same contract in all relevant aspects. Neither exercised their rights to opt out of the arbitration agreement.

## B. Motions for Remand and Discovery

### 1. Burden of Proof

The general rule is that the party seeking removal and opposing remand has the burden of establishing subject matter jurisdiction. *Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). The district court is normally required to resolve all doubts concerning federal jurisdiction in favor of remand. *Id.* When a complaint alleges no specific amount of damages, the defendants must prove by a preponderance of the evidence that the amount in controversy exceeds the

AO72A
(Rev. 8/82)

jurisdictional amount. *See In re Minn. Mut. Life Ins. Co. Sales Practice Litig.*, 346 F.3d 830, 834 (8th Cir. 2003).

For class actions, the removing party has the burden of proving the requirements of 28 U.S.C. § 1332(d)(2) by a preponderance of the evidence. Demonstration of these requirements establishes a prima facie case for jurisdiction and satisfies the removing party's burden. Once those requirements have been satisfied, the party seeking remand has the burden of establishing the prerequisites for the exceptions to jurisdiction contained in 28 U.S.C. § 1332(d)(3) and (d)(4). *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007). Although the Eighth Circuit has not ruled on the burden of proof for the CAFA exceptions, the Fifth, Seventh, Ninth, and Eleventh Circuits have so ruled, and other district courts in the Eighth Circuit have followed their lead. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007); *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 680 (7th Cir. 2006); *Serrano*, 478 F.3d at 1024. *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006); *Summerhill v. Terminix, Inc.*, No. 4:08-CV-00659-GTE, 2008 WL 4809448, at *1, 2008 U.S. Dist. LEXIS 91939, at *4 (E.D. Ark. Oct. 30 2008).

## 2. Amount in Controversy

For prima facie jurisdiction under CAFA, the amount in

controversy must exceed $5,000,000. The amount in controversy is tested by the value of the suit's intended benefit to the plaintiff. *Mass. State Pharm. Ass'n v. Fed'l Prescription Serv. Inc.*, 431 F.2d 130, 132 (8th Cir. 1970). "Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Bell v. Hershey Co.*, --- F.3d ---, 2009 WL 465949, at *2 (8th Cir. 2009).

The parties identify three sources of monetary remedy relevant to the amount in controversy: (1) the amount of loan interest and check cashing fees paid during the class period, (2) the amount of uncollected loan principal, and (3) attorney's fees. Both parties agree that doubling the amount of check cashing fees and interest charged is appropriate for amount in controversy purposes and would be $4,664,108 in this case.

Loan forgiveness is another remedy sought by Plaintiffs, but one that they contend is not properly included in the amount in controversy. They claim only "damages" are included in the calculation. It is well settled that the value to the plaintiff of an equitable remedy is properly included in the amount in controversy. "In actions seeking declaratory or

Page 7 of 21

injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977). Based on the parties' filings, the value of voiding existing unpaid loans is $3,194,339. This amount is properly included in the amount in controversy.

The Plaintiffs also contest the inclusion of the full amount of attorney's fees. "Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction." *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001). The Plaintiffs argue that the statutory attorney's fees not yet incurred are not appropriate for inclusion in the amount in controversy. Future payments that will not be contingent or speculative are properly included in the calculation of the amount in controversy. *See Thompson v. Thompson*, 226 U.S. 551, 559-60 (1913). As the amount of attorney's fees will not be speculative or contingent, they are properly included in the amount in controversy.

Because it is proper to include all three remedies in the calculation of the amount in controversy, the jurisdictional minimum of $5,000,000 has been met. The Defendants have made their prima facie case for assertion of subject matter jurisdiction under CAFA.

### 3. (d)(4)(A) Local Controversy Exception

The local controversy exception is one of three means by which the prima facie establishment of jurisdiction under CAFA may be defeated. The exception is inapplicable when "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). The existence of an action that meets these conditions defeats the exception.

The Defendants point to *McGinnis v. Advance America* as having sufficient similarity to void the local controversy exception. No. 2007-32 (Cir. Ct. Clark Co. filed Feb. 27, 2007). *McGinnis* was filed in 2007, which places it within the relevant time period. The *McGinnis* defendants are Advance America Servicing of Arkansas, Inc., d/b/a Advance America Cash Advance; Advance America, Cash Advance Centers of Arkansas, Inc.; and Advance America, Cash Advance Centers, Inc. Therefore, all of the defendants to this lawsuit are also defendants in *McGinnis*. Both this case and *McGinnis* concern usurious rates of interest charged by Advance America and allege usury and violations of the Deceptive Trade Practices Act. Plaintiffs' counsel for both cases is the same, and sections of the *McGinnis* complaint appear to be copied and pasted into the present complaint. Finally, Plaintiffs have

Page 9 of 21

referred to *McGinnis* as a similar action and have made no attempt to differentiate the two. The Court concludes that *McGinnis* is sufficiently similar to void application of the Local Controversy Exception of CAFA.

**4.  The  Home  State  Exception  and  Discretionary Jurisdiction**

Discretionary jurisdiction and the Home State Exception are the other two jurisdictional exceptions in CAFA. To establish the Home State Exception to federal jurisdiction, § 1332(d)(4)(B) requires the plaintiffs to show that "the primary defendants are citizens of the State in which the action was originally filed." Like the Home State Exception, a condition precedent for the discretionary jurisdiction exception is that the primary defendants must be citizens of the state in which the action was originally filed. In support of their Supplemental Motion to Remand, Plaintiffs claim that Advance America Servicing is an Arkansas resident. Plaintiffs do not allege that the other Defendant is either a resident of Arkansas, or not a primary defendant. Therefore, Plaintiffs have failed to meet their burden of showing the applicability of the Home State Exception or Discretionary Jurisdiction sections of CAFA.

**5. Plaintiffs' Motion for Discovery**

The Plaintiffs have moved for limited jurisdictional discovery for the purposes of determining the fraction of the

putative class members that are Arkansas citizens. From this information, Plaintiffs seek to determine the existence of one of the exceptions to federal jurisdiction under CAFA. For the reasons discussed above, Plaintiffs have failed to show other conditions necessary for establishment of these exceptions and their motion is denied as moot.

## C. Personal Jurisdiction

Defendant Centers seeks dismissal on the basis that personal jurisdiction is lacking. "If jurisdiction has been controverted, the plaintiff has the burden of proving facts supporting personal jurisdiction." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008). To defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). In a decision based on pleadings and affidavits, the Court must view conflicting facts in the light most favorable to the nonmoving party. *Id.* at 646-47. Jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).

Federal courts "may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's

AO72A
(Rev. 8/82)

long-arm statute and by the Due Process Clause of the Constitution." *Miller*, 528 F.3d at 1090. Arkansas's long-arm statute grants personal jurisdiction to the extent permitted by the United States Constitution. Ark. Code Ann. § 16-4-101. Personal jurisdiction is proper over a party that purposefully directs its activities at a jurisdiction and therefore purposefully avails itself of the laws of the jurisdiction and receives the benefit of the legal protections therein. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

Alter ego is one means of establishing personal jurisdiction of a parent company. The alter ego doctrine applies when "the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." *Epps*, 327 F.3d at 649. "Determining the propriety of jurisdiction at a particular place always involves applying principles of fairness and reasonableness to a distinct set of facts." *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004). For the purposes of the alter ego doctrine, the parent's control of the subsidiary need not be so abusive to the corporate form as to allow corporate veil piercing. *Id.* at 452-53.

In this case, the affidavits of Jeffrey Newman state that

AO72A
(Rev. 8/82)

Centers does not conduct or consummate any type of business transactions and that Servicing is the sole originator and servicer of the transactions entered by Plaintiffs. Those affidavits further state that the conditions that would allow for corporate veil piercing are not present. While that may be technically correct, it is clear that Centers and Servicing do not have distinct corporate existences. According to Newman's affidavit, Centers is the sole member of the LLC that owns Servicing. Ken Compton, who is the CEO of Centers is listed as the President of Servicing. The Plaintiffs have provided numerous documents indicating that Centers acted as though it owned the Arkansas offices of Servicing and did not acknowledge the existence of Servicing. Several of Plaintiffs' exhibits showed use of "Advance America," indicating a lack of separation and distinction between Centers and Servicing. Plaintiffs have produced proof that Centers marketed in Arkansas. Defendants have produced no evidence that Servicing and Centers maintained separate corporate existences in any meaningful manner. Centers dealt directly with Arkansas regulators and payments to the state came from Centers.

Although Servicing was the corporate entity that owned the offices in Arkansas and with whom Plaintiffs transacted their business, the evidence before the Court reflects that Servicing is the alter ego of Centers. The Defendants' brief

AO72A
(Rev. 8/82)

cites to a number of cases that stand for the propositions that a parent/subsidiary relationship, common trade name, defense of a lawsuit, administrative servicing, and consolidated financial statements do not, by themselves, allow the exercise of personal jurisdiction. We agree that none are dispositive but all they all serve as signs pointing the same way. When combined with a lack of separation in marketing, collections, management, and regulatory interaction, it is clear that no meaningful separation exists for jurisdictional purposes. Although Centers and Servicing may not have disregarded the corporate form, the evidence shows that the operations and public representations of Servicing and Centers are sufficiently comingled that Servicing is the alter ego of Centers. Defendants do not contest personal jurisdiction over Servicing, and therefore this Court has personal jurisdiction over Centers as well.

**D. Defendants' Motions to Stay and Compel Arbitration**

The Defendants seek to stay and compel arbitration in accordance with the arbitration agreement signed by both parties, and the Plaintiffs contend the arbitration agreement should not be enforced. An arbitration agreement is enforceable when two requirements are met. Those requirements are: (1) the existence of a valid arbitration agreement and (2) whether the particular dispute falls within the terms of

that agreement. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). We will examine each requirement in turn.

**1. Existence of a Valid Arbitration Agreement**

The Federal Arbitration Act (FAA) states that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction...shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a party aggrieved by the failure of another party to arbitrate under a written agreement to seek an order in a United States district court compelling arbitration. 9 U.S.C. § 4.

The FAA created a body of federal substantive law, and state law cannot bar application of § 2 of the FAA. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). As a matter of substantive federal arbitration law, an arbitration agreement is severable from the remainder of the contract. *Id.* The validity of the arbitration agreement must be analyzed separately from the underlying contract; if the arbitration agreement is valid then the matter of the contract's validity is to be determined in arbitration, and not by a court. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). The separability of arbitration

Page 15 of 21

AO72A
(Rev. 8/82)

clauses can mean that a valid arbitration clause can compel arbitration of a dispute as to the validity of the contract as a whole. *Buckeye Check Cashing*, 546 U.S. at 445. "Under the FAA, ordinary contract principles govern whether parties have agreed to arbitrate." *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir. 1997).

Although states may not impose special requirements on the validity of arbitration clauses, they may apply existing general contract principles to determine the validity of an arbitration agreement. In *Doctor's Associates, Inc.* v. *Casarotto*, the Supreme Court held that the FAA pre-empted a Montana statute that specified notice requirements for arbitration clauses. 517 U.S. 681, 684-85 (1996). Arbitration agreements are to be judged on "the same footing as other contracts." *Id*. at 687. Arkansas has a line of cases where the validity of a arbitration agreement was at issue. Those cases applied general contract principles applicable to all contracts, and not specially to arbitration agreements.

We summarize Arkansas's application of general contract principles to arbitration clauses as follows. First, "the construction and legal effect of a written contract to arbitrate are to be determined by the court as a matter of law." *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 79 (2005). The same rules of construction and

interpretation apply to arbitration agreements as apply to agreements generally. *Cash in a Flash Check Advance of Ark. L.L.C. v. Spencer*, 348 Ark. 459, 467, 74 S.W.3d 600, 605 (2002). Contracts valid under Arkansas law meet five elements: (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *The Money Place, L.L.C. v. Barnes*, 349 Ark. 411, 414, 78 S.W.3d 714, 716 (2002). The Arkansas cases examined the validity of the arbitration agreement using these contract requirements. The Plaintiffs attack the arbitration agreement as lacking mutuality and as unconscionable.

### a. Mutuality

Most similar Arkansas cases, as well as the Plaintiffs, focus on the fifth element, mutuality of obligation. Those cases required the terms of the agreement to fix real liability on both parties. *Id.* at 415, 78 S.W.3d at 717. Arkansas courts have found a lack of mutuality in agreements that require one party to arbitrate its grievances, but not the other. *See, e.g., Showmethmoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 121, 27 S.W.3d 361, 366-67 (2000). Arbitration agreements may not be used to shield one party from litigation while allowing the other party relief via the court system. *Asbury Automotive Used Car Center v. Brosh*, 364 Ark. 386, 391, 220 S.W.3d 637, 641 (2005). Inclusion of a

AO72A
(Rev. 8/82)

provision giving the company the ability to pursue "all available remedies" is indicative of a lack of mutuality. *E.g. Advance Am. Servicing of Ark., Inc. v. McGinnis*, 375 Ark. 24, --- S.W.3d. --- (2009) (affirming class certification); *The Money Place*, 349 Ark. at 417-18, 78 S.W.3d at 719; *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 141, 60 S.W.3d 436, 442 (2001).

This case is distinguishable from the above cases invalidating arbitration agreements. The agreement before the Court contains none of the terms and conditions that created arbitration obligations on one party but not the other. There is no "all civil remedies" language, and both sides are bound by the arbitration agreement.

Other federal district courts have found Arkansas's mutuality requirement pre-empted by the FAA. *See Enderlin v. XM Satellite Radio Holdings, Inc.*, No. 4:06-cv-0032, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008), *See also Easter v. Compucredit Corporation*, No. 1:08-cv-1041, 2009 WL 499384 (W.D. Ark. Feb. 27, 2009). Since mutuality is present in this case, we find it unnecessary to address pre-emption.

### b. Unconscionability

The Plaintiffs contend that the arbitration agreements are unconscionable. Arkansas requires a review of "the totality of the circumstances surrounding the negotiation and

AO72A
(Rev. 8/82)

execution of the contracts." *Nat. Union Fire Ins. Co. of Pittsburgh v. Guardtronic, Inc.*, 76 Ark. App. 313, 320, 64 S.W.3d 779, 783 (2002). Two important considerations are whether there is a gross inequality of bargaining power between the parties and whether the aggrieved party was made aware of and comprehended the provisions in question. *Id*. at 320, 64 S.W.3d at 783-84.

The contract is written in such a way to call attention to the arbitration agreement and to produce awareness. The arbitration agreement occupies a large and prominent portion of the written contract, occupying an entire page of the agreement. An explanation of the rights lost to the consumer by signing the arbitration agreement is set off in all capital letters and bold font. The first page contains an acknowledgment of the existence of the arbitration clause in bold font. Plaintiffs cannot fairly claim they were unaware of the agreement's contents.

Although the parties may have unequal bargaining power, the effects of that inequality are ameliorated by the opt-out clause. The agreement allows the consumer thirty days to opt out of the arbitration agreement. Thirty days is sufficient time in this case to remove time pressure from an agreement to arbitrate. The Court notes that thirty days is longer than the term of the loan. The Court agrees with the Plaintiffs that

AO72A
(Rev. 8/82)

class action waivers, even when binding to both sides, exist to benefit the company, and not the consumer. However, the inclusion of a class action waiver is insufficient to outweigh fair notice and an opt-out clause to create a totality of the circumstances rendering the arbitration agreement unconscionable.

### 2. Inclusion of the Dispute in the Arbitration Agreement

Once the Court determines that an arbitration agreement is valid, it must then determine if the dispute falls within the terms of the agreement. The Supreme Court stated that § 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474-75 (1989). "[T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt*, 489 U.S. at 476.

In this case, the terms of the arbitration agreement require the adjudication of all disputes between the parties either in arbitration or small claims court. As it is undisputed that the issues in controversy exceed the competence of small claims court. Arbitration is thus required.

AO72A
(Rev. 8/82)

**E. Conclusion**

The Defendants have met their prima facie burden for removal and Plaintiffs have not established a jurisdictional exception. Therefore, this Court has proper subject matter jurisdiction. The Court also has personal jurisdiction over all parties. The arbitration agreement is valid and enforceable. Plaintiffs' Motions for Remand (Docs. 12,24) are **DENIED**, Plaintiffs' Motion for Discovery (Doc. 26) is **DENIED AS MOOT**, Defendant Servicing's Motion to Stay and Compel Arbitration (Doc. 4) is **GRANTED**, Defendant Centers' Motion to Dismiss for Lack of Personal Jurisdiction or Stay and Compel Arbitration (Doc. 6) is **GRANTED IN PART AND DENIED IN PART**. The Court orders this case **STAYED** and the parties are instructed to submit to arbitration. This action is hereby administratively terminated, subject to being reopened upon the conclusion of the arbitration proceedings.

IT IS SO ORDERED this 1st day of April, 2009.

/s/ Robert T. Dawson
Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)